IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ASMA SNYDER,

       **Plaintiff,**

       v.

KANSAS CITY AUTOMOTIVE
COMPANY, L.P., d/b/a HENDRICK LEXUS
KANSAS CITY,

       **Defendant.**

Case No. 2:23-cv-02564-HLT-GEB

**MEMORANDUM AND ORDER**

Defendant employed Plaintiff as a salesperson and finance manager at its car dealership between January 2020 and December 2021. Plaintiff alleges that while employed with Defendant she suffered discrimination and a hostile work environment because of her sex and suffered retaliation. She now sues Defendant under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Kansas Act Against Discrimination ("KAAD").

Defendant moves to stay the case pending arbitration. Doc. 20. Plaintiff opposes the motion. The Court grants Defendant's motion. The parties entered into a mandatory arbitration agreement covering Plaintiff's claims. Plaintiff cannot avail herself of the Ending Forced Arbitration Act ("EFAA") amendment to the Federal Arbitration Act ("FAA") because it does not apply retroactively to claims or disputes predating its enactment. The FAA's transportation-worker exception does not apply because Plaintiff was not engaged in the channels of foreign or interstate commerce. And Defendant did not waive the right to arbitrate.

**I.    BACKGROUND**

Plaintiff is female. Doc. 16 at 3. Plaintiff applied to work for Defendant (an automobile dealership) in December 2019. Doc. 21-2 at 3; Doc. 16 at 3. Plaintiff agreed to a mandatory

arbitration agreement at the time she submitted her employment application ("Arbitration Agreement"). Doc. 21-1 at 4-8. The Arbitration Agreement purports to cover all claims arising out of Plaintiff's employment with Defendant, including claims for discrimination, harassment, or retaliation in violation of state or federal law. *Id.* at 4-5.

Defendant hired Plaintiff in January 2020 as a Sales Consultant. She eventually became a Finance Manager. Doc. 27-1 at 1. Plaintiff sold vehicles on commission and worked to secure financing for customers who lived in Kansas as well as customers who lived out of state. *Id.* at 1-2. On at least one occasion she delivered to a customer out of state in St. Louis, Missouri. *Id.*

Plaintiff alleges Defendant constructively discharged her in December 2021 because of her sex. Doc. 16 at 12. Plaintiff alleges that while working for Defendant between January 2020 and December 2021 she endured sex-based discrimination and harassment and was unlawfully retaliated against. *See id.* at 12-14.

Plaintiff filed this lawsuit in December 2023 naming Hendrick Automotive Group, LLC and Hendrick Corporation, LLC as defendants. Doc. 1. They were not proper defendants to Plaintiff's lawsuit. Doc. 14. Plaintiff subsequently filed an amended complaint in March 2024 naming Defendant as a party. Doc. 16 at 1. Defendant filed the instant motion to compel on May 14, 2024. Doc. 20. That same day, Defendant filed an answer to the amended complaint. Doc. 22. Defendant has not engaged in any additional motion practice. Nor does it appear from the docket that it has issued or responded to discovery. The magistrate judge has deferred scheduling in this case until after the motion to compel is decided. Doc. 29.

## II.     ANALYSIS

### A.     The Arbitration Agreement applies and covers Plaintiff's claims.

Under the FAA, "agreements to arbitrate are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *In re Cox Enters., Inc.*

*Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1115-16 (10th Cir. 2015) (quoting 9 U.S.C. § 2) (internal quotation marks omitted). The FAA evinces a "liberal federal policy" that favors arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). Arbitration is a contractual matter. *Palomo v. GMRG ACQ1, LLC*, 631 F. Supp. 3d 1003, 1006 (D. Kan. 2022). A court initially determines whether a valid arbitration agreement exists, and the burden is on the party seeking to compel arbitration. *Id.* A court then determines whether a dispute falls within the arbitration agreement. *Id.*

Defendant points to the Arbitration Agreement in which Plaintiff agreed to arbitrate claims like those she brings here. Defendant provides evidence of offer, acceptance, and consideration and identifies provisions in the Arbitration Agreement that cover the claims in this case. Plaintiff does not dispute that she signed the Arbitration Agreement. Plaintiff also does not dispute that the Arbitration Agreement covers the claims in this case. Given this, the Court must compel arbitration unless some other reason exists that would dictate otherwise.

      **B.**      **The EFAA, the transportation-worker exception, and waiver.**

Plaintiff makes three arguments to avoid arbitration: (1) the EFAA applies and allows her to proceed in federal court, (2) she is a transportation worker and covered by the transportation-worker exception to the FAA, and (3) Defendant waived its right to arbitration by waiting to bring this motion. The Court addresses and rejects each argument.

      **1.**      **The EFAA**

Plaintiff initially argues the EFAA shields her from arbitration. Congress enacted the EFAA as an amendment to the FAA on March 3, 2022. The EFAA states in relevant part:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute . . . , no predispute arbitration agreement . . . shall be valid or

>  enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to . . . [a] sexual harassment dispute.

9 U.S.C. § 402(a). Plaintiff contends that the EFAA applies to her claims because she filed her complaint after the EFAA was enacted and has plausibly alleged sexual harassment.

It is true that Plaintiff filed her complaint after the EFAA's enactment. But her argument ignores the more important timing issue. Specifically, the EFAA states that it applies "with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act." Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022). This means that the EFAA "does not apply retroactively to claims that accrued before its enactment . . . ." *Bopda v. Comcast of the District, LLC*, 2024 WL 399081, at *1 (4th Cir. 2024); *see also, e.g.*, *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 550 (S.D.N.Y. 2023) (same) (collecting cases); *Woodruff v. Dollar General Corp.*, 2022 WL 17752359, at *3 (D. Del. 2022) (same); *Olivieri v. Stifel, Nicolaus & Company, Inc.*, 2023 WL 2740846, at *5-6 (E.D.N.Y. 2023) (same).

Here, Plaintiff cannot avail herself of the EFAA (even assuming she plausibly alleged sexual harassment) because the underlying dispute and her claims necessarily arose or accrued before the EFAA's enactment. This is because a dispute arises when the conduct that constitutes the alleged sexual harassment occurs. *See Castillo v. Altice USA, Inc.*, 698 F. Supp. 3d 652, 656-57 (S.D.N.Y. 2023). And a claim "accrues when [a] plaintiff has a complete and present cause of action." *Gabelli v. SEC*, 568 U.S. 442, 448-49 (2013) (internal quotation omitted); *see also Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1178 (10th Cir. 2011) (Gorsuch, J.) (explaining that hostile work environment claims are premised on the continuing violation principle and accrue "each time acts contributing to that environment occur"). Plaintiff ended her employment in December 2021, which means that the underlying dispute arose, and her claims necessarily accrued, in December 2021 <u>at the latest</u>. The EFAA was enacted months later in March 2022. The

upshot is that the underlying dispute and Plaintiff's claims arose or accrued <u>before</u> the EFAA and are not covered by the amendment.

Plaintiff insists that the EFAA covers "any case filed after its enactment." But her argument is premised on a misreading of the EFAA's text and a distortion of the Eastern District of Pennsylvania's opinion in *Steinberg v. Capgemini American, Inc.*, 2022 WL 3371323 (E.D. Pa. 2022). The EFAA states it applies to any "dispute or claim that arises or accrues on or after" its date of enactment. Plaintiff does not argue that her <u>claim</u> accrued when she filed suit. Rather her argument is that her <u>dispute</u> arose when she filed either her EEOC complaint or the present lawsuit. But "a claim necessitates an underlying dispute, such that a dispute sparks the potential for a later claim that ultimately accrues." *Castillo*, 698 F. Supp. 3d at 657 (cleaned up). The opinion in *Steinberg* does not suggest otherwise. *Steinberg* only surmised that the <u>latest possible date</u> for a claim to accrue or a dispute to arise is when the case was filed. *Steinberg*, 2022 WL 3371323, at *2. The *Steinberg* court specifically disclaimed that it was determining "if the actual trigger date for a 'claim or dispute' 'arising and accruing' is the date of: (1) filing of the case or (2) the act of harassment itself." *Id.* at *2 n.2.

In sum, it is undisputed that the entirety of Plaintiff's employment, and by extension any harassing conduct, took place before enactment of the EFAA. The only actions that took place after its enactment are Plaintiff's EEOC complaint and this case's filing. The underlying dispute arose and her claim accrued before the EFAA's enactment. This plus the fact that the EFAA is not retroactive means that the EFAA does not apply.

### 2. The transportation-worker exception

Plaintiff alternatively argues that the FAA's transportation-worker exception applies. Section 1 says that nothing in the FAA "shall apply to contracts of employment of seamen, railroad

employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Plaintiff asserts that she sold cars to and secured financing for customers outside Kansas and that she delivered a vehicle to an out of state customer on at least one occasion. Plaintiff therefore contends that she falls within the transportation-worker exception.

The Court is not persuaded. There are two steps to determining whether the transportation-worker exception applies. The Court first must first determine what "class" of workers Plaintiff belongs to by virtue of her job duties. *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 455-58 (2022). It must then determine whether that class of workers is engaged in foreign or interstate commerce in the way railroad workers and seamen are. *Id.* This means that the Court must determine whether Plaintiff belongs to a class of workers "directly involved in transporting goods across state or international borders . . . ." *Id.* at 457. A class of workers fits the bill if it is "actively engaged in the transportation of goods across borders via the channels of foreign or interstate commerce." *Id.* at 458.

Whether Plaintiff, herself, may have occasionally (or, indeed, regularly) delivered products across state lines is immaterial. *See Walz v. Walmart Inc.*, 2024 WL 2864230, at *7 (W.D. Wash. 2024). Active engagement with transportation of goods using interstate commercial channels must be a <u>defining</u> feature of the <u>class of workers</u> to which the plaintiff belongs. *Id.* ("[T]he question is not whether the individual worker actually engaged in interstate commerce, but whether the class of workers to which the complaining worker belonged engaged in interstate commerce." (quoting *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 800 (7th Cir. 2020) (Barrett, J.) (cleaned up))). How much or how little an individual worker crossed state lines does not figure into the analysis. *Id.*

Plaintiff was a car salesperson and a finance manager. And her argument that she was a transportation worker essentially boils down to her claims that she sold vehicles to and assisted with financing for out-of-state customers and that she delivered a vehicle to an out-of-state customer on at least one occasion. This isn't sufficient to establish that a defining feature of the class of work she did was engagement with the channels of interstate commerce. Plaintiff's own experience selling vehicles to customers out-of-state does not situate her work for Defendant among the various classes of transportation workers covered by this section. Section 1's exemption for transportation workers therefore does not apply to Plaintiff. *See Drawdy v. Don Jackson Chrysler Dodge Jeep, Inc.*, 2015 WL 12591774, at *3 (N.D. Ga. 2015) ("A car salesman like plaintiff is not actually engaged in transportation of goods in commerce.").

### 3. Waiver

Lastly, Plaintiff argues that Defendant waived its rights under the Arbitration Agreement because Defendant waited about five months to move to compel arbitration. Plaintiff's argument lacks merit. Rights to arbitrate, like other contractual rights, can be waived. *In re Cox Enters., Inc.*, 790 F.3d at 1115-16. Persuading a court that it should infer a waiver through a party's conduct alone presents an uphill climb because if there are "any doubts concerning the scope of arbitrable issues, [they are] resolve[d] . . . in favor of arbitration." *Id.* at 1116 (internal quotation marks and citations omitted). "This is true whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* (internal quotation marks and citations omitted). When courts decide whether a waiver has occurred, they do so with a mind toward determining whether the party seeking arbitration is trying to get "another bite at the apple" or otherwise using arbitration to manipulate the judicial process. *Id.* at 1116-17.

The Tenth Circuit has identified six factors that can assist with this determination. These factors are:

> (1) whether the party[ seeking arbitration's] actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and, (6) whether the delay affected, misled, or prejudiced the opposing party.

*Strong v. Davidson*, 734 Fed. Appx. 578, 581 (10th Cir. 2018) (citation omitted).

Nothing in this case suggests that Defendant waived its arbitration rights. There is no indication Defendant is attempting to use arbitration to manipulate the judicial machinery. And none of the six factors above point in the direction of waiver. Defendant was only recently named as a party to the litigation. It filed its motion to compel arbitration concurrently with its first responsive pleading. There has been virtually no delay in Defendant's efforts to seek a stay.[1] Defendant hasn't issued or responded to discovery. No counterclaims have been filed. And there's no evidence that Defendant's request has prejudiced Plaintiff. Defendant has not waived its right to arbitrate.

**III.    CONCLUSION**

Plaintiff and Defendant entered a binding, mandatory arbitration agreement that covers Plaintiff's claims. Defendant seeks to compel arbitration and stay the proceedings before this

---

[1] Plaintiff suggests that Defendant's delay is evidence by its pre-litigation knowledge of her claims. But this isn't a relevant consideration. A party is not required to seek arbitration the moment it's put on notice of claims against it. *See, e.g., Provident Bank v. Kabas*, 141 F. Supp. 2d 310, 318 (E.D.N.Y. 2001).

Court. The Court rejects Plaintiff's challenges to the Arbitration Agreement's enforceability and grants Defendant's motion to compel arbitration.

THE COURT THEREFORE ORDERS that Defendant's motion (Doc. 20) is GRANTED.

THE COURT FURTHER ORDERS that this case is STAYED during the pendency of arbitration. The parties shall file a status report on February 6, 2025, which is 6 months from the date of this order, or within 7 days of the arbitration's conclusion, whichever is earlier.

IT IS SO ORDERED.

Dated: August 6, 2024

/s/ *Holly L. Teeter*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE